Craig S. **RITCHIE**

v.

William J. **HENDERSON**, **Postmaster General**

No. CIV. A. 99–2484.

United States District Court, E.D. Pennsylvania.

Aug. 24, 2001.

---

Lorrie McKinley, Esq., Philadelphia, PA, for plaintiff.

Scott A. Coffina, AUSA, Philadelphia, PA, for defendant.

### *MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION

Presently before the Court is Defendant's Motion for Summary Judgment with Respect to Plaintiff's Instatement Claims (Document No. 21, filed December 29, 2000); Defendant's Motion to Attach Plaintiff's Back Pay Funds (Document No. 22, filed December 29, 2000); Plaintiff's Cross Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment (Document No. 23, filed January 12, 2001); Plaintiff's Memorandum of Law in Opposi-

tion to Defendant's Motion to Attach Plaintiff's Back Pay Funds (Document No. 24, filed January 12, 2001); Defendant's Opposition to Plaintiff's Cross Motion for Partial Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion to Attach Back Pay (Document No. 25, filed January 22, 2001); Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment (Document No. 26, filed January 29, 2001); Declaration of Craig S. Ritchie (Document No. 27, filed April 30, 2001); and Defendant's Response to Declaration of Plaintiff Craig Ritchie (Document No. 28, filed May 11, 2001). Within these documents are three separate motions and plaintiff's request for discovery: 1) Defendant's Motion for Summary Judgment with Respect to the Instatement Claims; 2) Plaintiff's Cross Motion for Partial Summary Judgment on the issue of whether the EEOC's Reconsideration Decision, which found the United States liable for discrimination, is binding on the Agency; 3) plaintiff's request to deny or postpone ruling on defendant's motion for partial summary judgment so that the parties may engage in formal discovery pursuant to Rule 56(f); and 4) Defendant's Motion to Attach Back–Pay Funds.

For the reasons set forth below, the Court will deny Defendant's Motion for Summary Judgment with Respect to the Instatement Claims; deny Plaintiff's Cross Motion for Partial Summary Judgment; grant plaintiff's request for discovery with respect to Defendant's Motion for Summary Judgment; and deny as moot Defendant's Motion to Attach Back–Pay Funds.

## II. BACKGROUND

This case arises out of plaintiff's termination as an employee of the United States Postal Service ("USPS"), and is brought pursuant to §§ 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791, *et seq.*

Plaintiff was a transitional letter carrier ("TE") at the Plymouth Meeting Post Office from November 28, 1992 through November 7, 1993. Transitional employees were used by the Postal Service to fill interim staffing needs. These employees were hired for 359 day terms with no guarantee of being permanently hired by the USPS. *See* Defendant's Motion for Summary Judgment with Respect to the Instatement Claims, n. 1.

On July 12, 1993, Plaintiff filed an Informal Complaint of Discrimination with the Equal Employment Opportunity ("EEO") office against the postmaster of the Plymouth Meeting Post Office, Barbara Stephens, alleging that, while Ms. Stephens was authorized to hire three part-time flexible letter carriers ("PTF carriers")[1], Ms. Stephens did not do any hiring because plaintiff was on the hiring register and she did not want to hire plaintiff. He later added a second complaint against Ms. Stephens, alleging that on August 9, 1993, plaintiff received a Letter of Warning for failure to meet the performance requirements of a TE. He claims that he was discriminated against because of cognitive disabilities, namely memory loss stemming from his Lyme disease. *See* Informal Complaint of Discrimination, attached to Document No. 21 ("Ex.D–2").

On October 6, 1993, plaintiff was notified that he would be "removed from the Postal Service" in thirty days for leaving a tray of mail outside in a rain storm on September 16, 1993. *See* Notice of Removal dated October 6, 1993, attached to Document No.

---

**1.** PTF carriers are permanent Postal Service employees who are not guaranteed 40 hours per week, a consistent work schedule or a particular delivery route. They generally advance to full-time carrier positions based upon their seniority.

21 ("Ex.D–1"), and he was so terminated. Plaintiff denied the allegations in the Notice of Removal, and appealed his termination to the Equal Employment Opportunity Commission ("EEOC"), alleging that it was premised upon his disability and in retaliation for his EEO activity. *See* Informal Complaint of Discrimination, Case No. 4–C–1751007–94, attached to Document No. 21 ("Ex.D–3").

Plaintiff was also on the hiring register for the Blue Bell Post Office in 1993 and states that he was eligible for a PTF carrier position and a clerk position at that Post Office. He was interviewed for a PTF carrier position at Blue Bell in November 1993. *See* EEO Investigative Affidavit of John J. Ryan, Jr., dated May 25, 1994, attached to Document No. 21 ("Ex.D–17"). Thereafter, the Blue Bell supervisor spoke with Ms. Stephens, who informed the supervisor about plaintiff's EEO activity and his slow casing times. *See* EEO Investigative Affidavit of Barbara Stephens, dated May 19, 1994, attached to Document No. 21 ("D–16"). Plaintiff was not hired as a PTF carrier or a clerk at the Blue Bell Post Office.

Plaintiff filed three formal EEO complaints between September 1993 and February 1994 in which he alleged, *inter alia,* that he was dismissed from his TE position, and not hired for several open PTF carrier positions at both the Plymouth Meeting and Blue Bell Post Offices, as a result of disability discrimination and retaliation by Ms. Stephens. *See Ritchie v.*

*Runyon,* 1998 WL 72179, *1 (E.E.O.C. Feb. 10, 1998). Specifically, he alleged that Ms. Stephens discriminated against him in July 1993 on the basis of disability when she told him that she would not hire him for one of the PTF carrier jobs, and that she did not fill these positions until she got rid of plaintiff. He also alleged that his position on a Plymouth Meeting hiring register,[2] established shortly after his dismissal, was adversely affected because of his termination. Plaintiff further alleged that, after his dismissal from the Plymouth Meeting Post Office, he was not hired as a PTF carrier at the Blue Bell Post Office because of statements Ms. Stephens made to the Blue Bell supervisor about plaintiff. *Id.* at *2–4.

After a hearing on October 13, 1994, an administrative judge issued a bench decision on November 10, 1994 recommending a finding of no discrimination on all issues raised by plaintiff—the judge found that plaintiff was not a qualified individual with a disability and therefore was not protected under the Rehabilitation Act, and that there was no retaliation with respect to either the Plymouth Meeting or Blue Bell PTF carrier positions at issue in this case. *Ritchie v. Runyon,* 1998 WL 72179 at *2. Based on this EEOC decision, the USPS issued a Final Agency Decision on January 23, 1995, finding no discrimination against Plaintiff. *See* Final Agency Decision, dated January 23, 1995, attached to Document No. 21 ("Ex.D–5").

**2.** According to defendant, there has been some confusion about the terms "hiring register" and "hiring worksheet," as they were used interchangeably at the EEOC hearing and throughout the record. The term "hiring register" is a list of all employees who have taken the postal entrance test and expressed interest in particular positions in as many as three different postal facilities. The employees are ranked according to their test scores. The hiring registers for Southeastern Pennsylvania are accessible only by the human resource office in Lancaster, not by the individual postmaster. Once a postmaster begins to fill positions, they request a "hiring worksheet" from the human resources office and select from among the candidates on the hiring worksheet. The names on the hiring worksheet are drawn from the top of the hiring register, ranked in descending order. Decl. of Dawn M. Moyer, dated January 27, 2001 ("Ex.D–19") ¶¶ 3–5.

Plaintiff appealed the Final Agency Decision to the EEOC Office of Federal Operations ("Office of Federal Operations") which reversed, in large part, the findings of the administrative judge on February 10, 1998. *See Ritchie v. Runyon,* 1998 WL 72179. In the decision, the Office of Federal Operations concluded that plaintiff was discriminated against on the basis of disability by the Plymouth Meeting Postmaster because she did not take make reasonable accommodations for his memory problem, and that she harbored some animosity against plaintiff. *Id.* at *7. The Office of Federal Operations ordered the USPS to expunge all disciplinary action taken against plaintiff, including its removal notice from plaintiff's employment file, and to pay plaintiff back pay for the remainder of the TE term, and for a second TE term, based on a finding that TE's generally were appointed to a second term. Further, the USPS was ordered to investigate plaintiff's claim for compensatory damages. It finally ordered the USPS to place plaintiff retroactively into a PTF carrier position, finding that "absent discrimination, it is . . . likely that [plaintiff] would have received one" of the three PTF carrier positions open in 1993 at Plymouth Meeting and filled in 1994. The Office of Federal Operations affirmed the finding that plaintiff was not discriminated against when he was not hired for a PTF carrier position at the Blue Bell Post Office because the vacancy in question was canceled as a result of an unrelated arbitration settlement. *See id.* at *8.

The USPS then appealed that part of the Office of Federal Operations order which placed plaintiff in a PTF carrier position, arguing that it went beyond "make whole" relief. On February 11, 1999, the EEOC granted the USPS's motion, and modified its previous order by eliminating the instatement remedy. *See Ritchie v. Henderson,* 1999 WL 91441 (E.E.O.C. Feb. 11, 1999).

Plaintiff filed a *pro se* complaint in this case on May 14, 1999. On September 21, 1999, after the Court appointed counsel for plaintiff, he filed an Amended Complaint in which he seeks to (1) enforce the remedies ordered by the EEOC, (2) obtain an award of compensatory damages in the amount of $300,000, (3) obtain an award of punitive damages; (4) appeal the decision not to order instatement to a PTF carrier position; and (5) obtain attorney's fees. The Amended Complaint contains four counts: I) Petition for Enforcement of the Final EEOC Decision; II) Instatement to the Position of PTF Carrier Position; III) Discrimination on the Basis of Disability with Regard to the PTF Position; and IV) Retaliation with Regard to the PTF Position.

The case was placed in the Civil Suspense file by Order dated October 25, 1999 so as to give the parties an opportunity to proceed with private mediation. That effort was unsuccessful.

The claim relating to the Blue Bell PTF carrier position was not presented in the Amended Complaint, but, by Order dated December 7, 2000, "Plaintiff's Amended Complaint is further amended by agreement so as to incorporate a claim for reinstatement at the Blue Bell Post Office." [3] The claim relating to the Blue Bell clerk position was raised for the first time in Plaintiff's Cross Motion for Partial Summary Judgment filed January 12, 2001.

Pursuant to the Court's Order dated December 7, 2000, by agreement of the parties, defendant paid plaintiff $33,601.87,

---

**3.** The Court intended its Order to use the term "instatement" rather than "reinstate- ment."

representing back pay and interest after the withholding of federal income tax in satisfaction of the EEOC's remedial order. *See* Checks from USPS to Craig S. Ritchie, dated December 14 and December 19, 2000, attached to Document No. 24 ("Ex.P–H").

Defendant filed a Motion for Summary Judgment with Respect to Plaintiff's Instatement Claims and a Motion to Attach Plaintiff's Back Pay Funds on December 29, 2000. On January 12, 2001, plaintiff filed his Cross Motion for Partial Summary Judgment on the issue of whether the EEOC's Reconsideration Decision is binding on the USPS. That motion also included a request to deny or postpone ruling on defendant's motion for summary judgment so that the parties may engage in formal discovery. The Court will rule on these motions in turn.

### III. STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment shall be granted. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (citing *Anderson* and *Celotex Corp.*).

In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence [offered by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). On the other hand, if reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

### IV. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE INSTATEMENT CLAIMS

In this motion, defendant seeks summary judgment on Counts II through IV of plaintiff's Amended Complaint—those counts related to plaintiff's claim that he is entitled to instatement to the position of PTF carrier at the Plymouth Meeting Post Office or, in the alternative, at the Blue Bell Post Office.-Specifically, Count II seeks instatement to the position of PTF

carrier, Count III alleges discrimination on the basis of disability with regard to the PTF carrier position, and Count IV alleges retaliation with regard to the PTF carrier position.

## A. Discussion of Applicable Law

■ To establish a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3d Cir.2000) (quoting *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir.1996).[4]

■ If plaintiff succeeds in establishing a prima facie case, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for plaintiff's treatment. *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999). This is a "relatively light burden." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). While the burden of production may shift under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ In the event a defendant meets this burden of production, a plaintiff must present evidence that the reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See Jones*, 198 F.3d at 410. A plaintiff may defeat a motion for summary judgment by pointing to some evidence—either direct or circumstantial—from which a fact finder "would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 413. *See also, Jackson v. Coatesville Area School Dist.*, 2000 WL 1185375, *5 (E.D.Pa. Aug.21, 2000).

> The plaintiff 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'

*Olson v. General Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir.1996) (quoting *Fuentes*, 32 F.3d 759, 765 (3d Cir.1994)).

■ It is well established that the primary objective of the anti-discrimination

---

4. Section 504(d) of the Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990." 29 U.S.C. § 794(d). *See Donahue*, 224 F.3d at 229 & n. 2 ("The elements of a claim under § 504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the [ADA]"); *McDonald v. Pennsylvania Dep't of Pub. Welfare, Polk Center*, 62 F.3d 92, 94 (3d Cir.1995) ("Congress made clear its intention that identical standards were to be applied to both Acts."). The Third Circuit has explained that "the familiar analytical framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for resolution of suits brought under Title VII, also guides an analysis of claims brought under the ADA." *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996).

statutes is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (discussing purpose of Title VII). While a victim of discrimination should be returned to the same position he or she would have occupied absent unlawful discrimination, "the protected employee is not to be catapulted into a better position than he or she would have enjoyed had the employer not acted unlawfully." *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1237 (3d Cir. 1994), *vacated by* 514 U.S. 1034, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995), *aff'd in relevant part*, 65 F.3d 1072 (3d Cir.1995).

 The claim of discrimination for the PTF carrier and clerk positions is best characterized as failure to hire. In failure to hire cases, instatement is the preferred remedy. *See* 29 C.F.R. § 1614.501(a)(3) (1993) ("When an agency, or the Commission, in an individual case of discrimination, finds that an applicant or an employee has been discriminated against, the agency shall provide full relief . . . which shall include the following elements in appropriate circumstances: . . . (3) An unconditional offer to each identified victim of discrimination of placement in the position the person would have occupied but for the discrimination suffered by that person, or a substantially equivalent position."); *Kraemer v. Franklin & Marshall Coll.*, 941 F.Supp. 479, 481 (E.D.Pa.1996). Front pay may be the proper remedy (1)

where the relationship between the parties has been so damaged by animosity as to make reinstatement impracticable; or (2) where no comparable position is available to which the claimant can be reinstated. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1104 (3d Cir.1995) (standard for reinstatement).

### B. Plymouth Meeting Position

Defendant argues that plaintiff is unable to demonstrate that, absent discrimination, he would have been placed in a PTF carrier position at Plymouth Meeting. In response, plaintiff contends that his evidence presents questions of material fact, and therefore summary judgment on this claim is inappropriate. In the event the Court disagrees on the present state of the record, plaintiff requests ninety days to complete discovery.[5]

 In late 1992, Plymouth Meeting was authorized to hire three PTF carriers.[6] Exs. D–8; D–9. At the time, these jobs were filled according to the applicant's ranking on a hiring register, which was based upon a written examination, open to the public. Ex. D–10, p. H–3. TE's have no special preference in hiring over the general public for PTF carrier positions—they must compete with everyone who takes the examination. Ex. D–19, ¶ 5. The first of these PTF carrier jobs were not filled until approximately June 1994, eleven moths after Postmaster Stephens' alleged comments, and six months

---

5. Plaintiff's counsel stated during a telephone conference on June 13, 2001 that the discovery request is based primarily on the fact that the Blue Bell Postmaster has not been deposed.

6. Plaintiff contends that Ms. Stephens requested this hiring authority. However, this contention is contradicted by evidence presented by the USPS. In an EEO Investigative Affidavit, dated February 28, 1993, signed by

Barbara Stephens, Plymouth Meeting Postmaster ("Ex.D–9"), she states that when she arrived at the Plymouth Meeting Office in April, 1993, she became aware of a proposed hiring complement worksheet, which had been submitted in 1992. The worksheet stated that the Plymouth Meeting Post Office had the authority to hire three PTF carriers and one clerk in 1992.

after plaintiff was removed from his TE position.

Defendant has articulated a legitimate, non-discriminatory reason for not hiring plaintiff as a PTF carrier at Plymouth Meeting. According to defendant, in April 1993, Ms. Stephens, who was the new Postmaster, told the post office operations manager that she did not want to hire anyone until the delivery routes were adjusted, and the Post Office's staffing needs were assessed. Ex. D–8; D–9, D–12, at 291–92. Further, Ms. Stephens testified she believed that she was contractually obligated to move the two current PTF carriers into full-time delivery routes before hiring new PTF carriers. *Id.* Additionally, defendant states that of the two PTF carriers who were ultimately hired at Plymouth Meeting, neither ranked lower than plaintiff on the hiring register.

Plaintiff asserts that these reasons were pretextual—that Ms. Stephens delayed in hiring PTF carriers until after plaintiff's dismissal. He argues that the animus she felt towards him because of his disability and the EEO complaints allegedly led to being discriminatorily terminated, also caused her to avoid hiring him as a PTF carrier.

Plaintiff also claims there is an issue of material fact with respect to his position on the hiring register for the PTF carrier position. On that point he argues his placement on a hiring register, created after his improper termination, was adversely impacted by the termination.

The Court concludes there are genuine issues of material fact regarding plaintiff's discrimination claim for the PTF carrier position at the Plymouth Meeting Post Office. At the summary judgment stage, the Court does not engage in weighing evidence. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Plaintiff has presented evidence of discrimination by Ms. Stephens and hiring of others that was not consistent with placement on the hiring register. This evidence is sufficient to raise a genuine issue of material fact. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505). Accordingly, defendant's Motion for Summary Judgment with Respect to Plaintiff's Instatement Claims will be denied as to the Plymouth Meeting claims.

## C. Blue Bell Positions

Plaintiff states that he was on the hiring register [7] for the Blue Bell Post Office in 1993, and that he was not hired for a PTF carrier or a clerk position at that Post Office because of statements made by Ms. Stephens to John Ryan, the Blue Bell Customer Service Supervisor. Plaintiff interviewed for a PTF carrier position at Blue Bell in November 1993. Upon Mr. Ryan's inquiry, Ms. Stephens told him about plaintiff's dismissal and casing problems, as well as his EEO complaints. EEO Investigative Affidavit of Barbara Stephens, dated May 16, 1994 ("Ex.D–15").

Defendant argues that plaintiff is not entitled to any relief with respect to the Blue Bell PTF carrier position because the vacancy at Blue Bell was canceled as a result of an arbitration award which resulted in the reinstatement of a previous Blue Bell employee. In addition, the Blue Bell Postmaster stated that the Plymouth

---

7. It is not clear from the pleadings whether there was one hiring register was for the PTF carrier and clerk positions, or whether there were separate registers.

Meeting Postmaster had no input into the Blue Bell hiring decision.

Plaintiff contends that no matter why he was not hired for the Blue Bell PTF carrier position, "[p]ursuant to Civil Service regulations, Mr. Ritchie was eligible to be considered for [a clerk] position based upon his interview for the previous vacancy (whether or not it was filled)," and he was not. Plaintiff's Cross Motion for Partial Summary Judgment at 5. On this point he notes that in December 1993, Joseph O'Donnell was hired as a career clerk at Blue Bell, a position for which plaintiff was eligible to be hired. He adds that his name was later improperly removed from the hiring register. In addition, because plaintiff has had no discovery with respect to the Blue Bell positions—the Blue Bell Postmaster has not been deposed, and plaintiff does not know when his name was removed from the Blue Bell hiring register, by whom, or why—he seeks the right to conduct discovery regarding this aspect of the case.

Defendant argues that it is entitled to summary judgment as to the clerk's position because 1) plaintiff failed to exhaust his administrative remedies as to that position, and 2) the circumstances related to the clerk's hiring have no significance with respect to the PTF carrier job for which plaintiff interviewed.

The Court will permit plaintiff to proceed with discovery with respect to the Blue Bell positions. Accordingly, defendant's motion for summary judgment with respect to the Blue Bell positions will be denied on the present state of the record. Such denial is without prejudice to defendant's right to renew the Motion for Summary Judgment with respect to the Blue Bell positions after completion of relevant discovery.

## V. PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE AGENCY DECISION

In his Cross Motion for Partial Summary Judgment, plaintiff argues that defendant is bound by the EEOC's Reconsideration Determination of Liability. Plaintiff also argues that the USPS has waived and/or conceded liability, or, at the very least, has settled the issues of back pay and interest and is bound by an agreement to pay back pay and interest.

As a preliminary matter, plaintiff's argument that defendant waived and/or conceded liability is premised on the idea that the USPS did not contest liability until December 7, 2000, in a telephone conference with the Court. This contention is not supported by the record. Defendant's Answer to Amended Complaint (Document No. 13, filed October 18, 1999) contains denials of liability, including that which was found by the EEOC. Further, defendant argues that conciliatory statements made during unsuccessful settlement negotiations do not constitute admissions of liability; that is a correct statement of the law. "If every offer to buy peace could be used as evidence against him who presents it, then the policy of the law which favors settlement of disputes would never be attained." *Outlook Hotel Co. v. St. John*, 287 F. 115, 117 (3d Cir.1923). In short, there is no evidence of record that defendant conceded liability.

█ Plaintiff's argument that the USPS is bound by its payment of back pay and interest is also without merit. These payments were made pursuant to an order of this Court, in compliance with the decision of the EEOC. Such action is not an admission of liability.

█ The principal question presented by this motion is whether or not there

must be a trial *de novo* in this case. Plaintiff argues that the trial in this case should be limited to remedy. Defendant takes the position that a trial should cover liability as well. There is some disagreement between the Circuits on this issue, and it has not yet been ruled upon by the Third Circuit.

■ The Court's inquiry begins with two well settled propositions. The first proposition is that federal employees have the same right to a trial *de novo* as private sector employees enjoy under Title VII on their employment discrimination claims when contesting an administrative decision. See *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). The second is that a person who is successful in a discrimination claim in the EEOC or at the final agency level may file an enforcement action in federal court without requiring *de novo* review. *See Rineer v. Slater*, No. 00–1411 (filed Oct. 4, 2000) ("a federal employee may seek enforcement of a favorable [Final Agency Decision] in district court without requiring *de novo* review of the merits of the discrimination claim"); *Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir.1986); *Haskins v. U.S. Dep't of the Army*, 808 F.2d 1192, 1199 (6th Cir.1987); *Simpkins v. Runyon*, 5 F.Supp.2d 1347, 1348 (N.D.Ga. 1998).

Plaintiff's case, as he concedes, is not a pure enforcement action as he challenges part of the determination of the EEOC. Plaintiff does not challenge the findings of liability for discrimination in connection with the Plymouth Meeting TE position, but he challenges the remedy ruling of the EEOC with respect to the PTF carrier positions. He further challenges the determination of liability as to the Blue Bell PTF carrier position, and adds a claim of entitlement to the Blue Bell clerk position.

At least two courts in this District have dealt with a substantially similar situation, and both concluded that there should be a trial *de novo* on the issue of liability. In *Cocciardi v. Russo*, 721 F.Supp. 735 (E.D.Pa.1989), both plaintiff and the government sought to limit the scope of the district court trial *de novo*. *Id.* at 736. The late Judge Broderick first noted the Supreme Court's comment that "[n]othing in the legislative history [of Title VII] indicates that the federal-sector 'civil action' was to have this chameleon-like character, providing fragmentary *de novo* consideration of discrimination claims. . . ." *Id.* at 737 (quoting *Chandler*, 425 U.S. at 861, 96 S.Ct. at 1959). *Cocciardi* also held that a trial *de novo* "requires a trial of all the issues in the particular case. It has always been distinguished from an 'appeal' wherein an appellate court reviews the record and makes a determination concerning specific errors." *Id.* Judge Newcomer reached the same conclusion in *Rineer*, and fully agreed with *Cocciardi*.

Both *Cocciardi* and *Rineer* distinguished *Pecker v. Heckler*, 801 F.2d 709 (4th Cir. 1986), one of the cases relied upon by plaintiff. In *Pecker*, the EEOC had found discrimination against the plaintiff in the denial of a promotion to a GS–10 position and ordered the plaintiff to be promoted retroactively. Plaintiff sued in district court, arguing that the position had been upgraded from a GS–10 to a GS–11 position shortly after she was denied promotion. *Id.* at 710–11. The parties did not contest liability. *Id.* at 710. The Fourth Circuit held that plaintiff should be promoted to the GS–11 position because, under the administrative decision, plaintiff was entitled to a retroactive promotion to GS–10 position which had been ungraded to GS–11. *Id.* at 713. As such, the *Cocciardi* court concluded *Pecker* was an "enforcement action" even though "the *Pecker* case might be interpreted as involving a

'fragmentary' review," *Cocciardi*, 721 F.Supp. at 737, a determination with which *Rineer* agreed. *Rineer* at 5.

Plaintiff disagrees with the characterization of *Pecker* as an enforcement action because the *Pecker* plaintiff received greater relief than that granted by the EEOC and upheld by the district court—promotion, reinstatement, back pay and front pay. This Court rejects plaintiff's argument on this issue and concludes, in accord with the interpretation of *Pecker* set forth in *Cocciardi* and *Rineer*, that *Pecker* is an enforcement action in which the only question of substance was a slight adjustment in the award. Significantly, unlike the case at bar, liability was not contested in *Pecker*. 801 F.2d at 710.

Plaintiff also argues that *Cocciardi* and *Rineer* were wrongly decided because they are based on dicta in *Chandler*. In *Chandler*, in holding that a "federal employee [has] the same right to a trial *de novo* as private-sector employees enjoy under Title VII," 425 U.S. at 864, 96 S.Ct. at 1961, the Supreme Court expressed concern with the "chameleon-like character, providing fragmentary *de novo* consideration of discrimination claims" at times, and review of the administrative record at other times. 425 U.S. at 861, 96 S.Ct. at 1959. These statements, although not precisely on point, are instructive as to how the Supreme Court views such cases. Accordingly, this Court will not allow plaintiff to challenge the portions of the EEOC decision with which he does not agree while trying to enforce the parts of the decision in his favor. *See generally, Moore v. Devine*, 780 F.2d 1559, 1564 (11th Cir.1986)

("[W]here ... the employee files a complaint asking the district court to consider the case on the merits and proceeds to trial *de novo* of the very claims resolved by the EEOC, he or she cannot complain when the district court independently resolves the claims on the merits.") To do so would certainly create a fragmentary review of his discrimination claims.[8]

Finally, plaintiff argues that *Cocciardi* was incorrectly decided because it relies on a "dictionary definition of the term 'trial *de novo*.'" Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Attach Plaintiff's Back Pay Funds, pp. 18–19. *Cocciardi* held that "a 'trial *de novo*' requires a trial of all the issues in the particular case. It has always been distinguished from an 'appeal' wherein an appellate court reviews the record and makes a determination concerning specific errors." *Cocciardi*, 721 F.Supp. at 737 (citing *Black's Law Dictionary* 1349 (5th Ed.1979) ("*trial de novo*: A new trial or retrial had in which the whole case is retried as if no trial whatever had been had in the first instance")).

▪ Trial *de novo* is a well defined term, with an ordinary usage—a trial in which all issues in a particular case, both issues of law and fact, are litigated. *See e.g., American Fruit Growers, Inc. v. S T Runzo & Co.*, 95 F.Supp. 842, 844 (W.D.Pa. 1951) ("Trial *de novo* is generally held to mean a trial anew of the entire proceeding, including the hearing of evidence as though no previous action had been taken."); *Farmingdale Supermarket, Inc. v. United States*, 336 F.Supp. 534 (D.N.J.

---

8. Additionally, plaintiff relies on *Morris v. Rice*, 985 F.2d 143 (4th Cir.1993), for the proposition that "the plaintiff may limit and tailor his request for *de novo* review, raising questions about the remedy without exposing himself to a *de novo* review of a finding of discrimination." *Id.* at 145. *Morris* is a

Fourth Circuit case, not directly on point, as it considered the question of whether the district court "erred in considering *de novo* a question of fact relevant to remedy which had also been considered and determined by the agency in the context of discrimination." *Id* at 146.

1971) ("A trial 'de novo' means trying the matter anew, the same as if it had not been heard before and as if no decision had been previously rendered.") (citing 2 Am.Jur.2d § 698); *Sowers v. Philadelphia Hous. Auth.,* 1993 WL 340946, *2 (Bankr. E.D.Pa. Aug.24, 1993) (same); *Doe v. United States,* 821 F.2d 694, 697–98 (D.C.Cir.1987) ("De novo [ordinarily means] a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion."); *In re: Initiative Petition No. 260, State Question No. 377,* 298 P.2d 753, 756 (Okla.1956) ("A trial *de novo* means trial of the entire case anew. A trial de novo means a complete new trial on both law and fact.") (citing *Smith v. Bruner's Guardianship,* 111 Okl. 93, 238 P. 448 (1925). *See also,* 1 *New Shorter Oxford English Dictionary* 633 (1993) (defining *de novo* as "afresh, starting again from the beginning"). There is no reason for the Court to differ from the time tested meaning of trial *de novo* in this case.

This case presents a mixed situation— plaintiff's Amended Complaint seeks enforcement of part of the EEOC decision and challenges other parts of the decision. What is being challenged goes to the heart of the findings of the EEOC. Liability is not conceded, and plaintiff is challenging some of the conclusions of the administrative decision. As the *Chandler* court stated, "Congress has made the choice" to have trials *de novo* in this sort of case, "and it is not for us to disturb it." *Chandler,* 425 U.S. at 864, 96 S.Ct. at 1961. When a plaintiff is challenging some, but not all of the findings of the EEOC, the

appropriate course is a trial *de novo,* on all of the issues, including liability.

As one court wrote in a similar situation:

[a] full trial *de novo* of course poses risks for a plaintiff, such as the one here, who has secured relief from the agency, but not as much as he wished. He might lose everything in such a complete new trial. The question is, "can he have his cake and eat it too."

*Simpkins v. Runyon,* 5 F.Supp.2d 1347, 1349 (N.D.Ga.1998). The *Simpkins* court likewise concluded that "the plaintiff is entitled to an order of enforcement ... or to a *de novo,* plenary trial on the merits." *Id.* at 1351.

Plaintiff may not have it both ways. Choosing to proceed as he has, the Court holds that a trial *de novo* must follow.[9]

## VI. REMAINING ISSUES

There are two remaining issues—Defendant's Motion to Attach Plaintiff's Back Pay Funds and plaintiff's request to deny or postpone ruling on defendant's motion for partial summary judgment to allow formal discovery under Rule 56(f). The Court will address these motions in turn.

Defendant's Motion to Attach Plaintiff's Back Pay Funds is based on the assumption that it is entitled to a trial *de novo,* and the Court has so ruled. Should the USPS prevail at trial, it would be entitled to recover the money paid to plaintiff pursuant to this Court's December 7, 2000 Order—$33.601.87, representing his back pay, plus interest, after the withholding of federal income tax.

---

**9.** The Court notes that "prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial *de novo.* Moreover, it can be expected that, in the light of the prior administrative proceedings, many potential issues can be eliminated by stipulation or in the course of pretrial proceedings in the District Court." *Id.* 425 U.S. at 863 n. 39, 96 S.Ct. at 1961 n. 39.

As there will be a trial *de novo* in this case, the USPS is entitled to a return of the money it has already paid plaintiff.[10] However, as discussed in a June 13, 2001 telephone conference with counsel, USPS will agree to something less onerous to plaintiff—placement of the funds in an escrow account. Plaintiff's counsel informed the Court during the telephone conference that, pending the resolution of Plaintiff's Cross Motion for Partial Summary Judgment, the funds paid to plaintiff by defendant were placed by counsel in an escrow account. In view of defendant's position, an order of attachment is not necessary and instead the Court will order that the funds remain in the escrow account opened by plaintiff's attorney for the pendency of this litigation.

Further, for the reasons set forth in § IV.C, *supra*, the Court will grant plaintiff's request for discovery with respect to defendant's motion for partial summary judgment. Counsel for plaintiff advised that she wants to depose the Blue Bell Postmaster, and that will be allowed. Plaintiff and defendant will also be permitted to conduct other relevant discovery. The discovery period will be limited to ninety days.

## VII. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment with Respect to Plaintiff's Instatement Claims and Plaintiff's Cross Motion for Partial Summary Judgment, and will grant plaintiff's discovery request. The Court will deny as moot Defendant's Motion to Attach Plaintiff's Back Pay Funds and instead will order that the funds be retained in an escrow account pending final disposition of this case. An appropriate order follows.

## ORDER

**AND NOW,** this 24th day of August, 2001, upon consideration of Defendant's Motion for Summary Judgment with Respect to Plaintiff's Instatement Claims (Document No. 21, filed December 29, 2000); Defendant's Motion to Attach Plaintiff's Back Pay Funds (Document No. 22, filed December 29, 2000); Plaintiff's Cross Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment (Document No. 23, filed January 12, 2001); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Attach Plaintiff's Back Pay Funds (Document No. 24, filed January 12, 2001); Defendant's Opposition to Plaintiff's Cross Motion for Partial Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion to Attach Back Pay (Document No. 25, filed January 22, 2001); Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment (Document No. 26, filed January 29, 2001); Declaration of Craig S. Ritchie (Document No. 27, filed April 30, 2001); and Defendant's Response to Declaration of Plaintiff Craig Ritchie (Document No. 28, filed May 11,

---

**10.** Rule 64 of the Federal Rules of Civil Procedure provides in part:

> during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought .... The remedies thus available include ... attachment .. and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

Fed.R.Civ.P. 64. Attachment is provided for by Pennsylvania law under 42 Pa.C.S.A. § 7501 *et seq.*

2001); and the Court noting that it is appropriate to transfer the case from the Civil Suspense File to the Court's active docket, for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** as follows:

1) The case is transferred from the Civil Suspense File to the Court's active docket;

2) Defendant's Motion for Summary Judgment with Respect to Plaintiff's Instatement Claims (Document No. 21, filed December 29, 2000) is **DENIED** as to the Plymouth Meeting PTF carrier positions and is **DENIED WITHOUT PREJUDICE** with respect to the Blue Bell PTF carrier and clerk positions;

3) Plaintiff's Cross Motion for Partial Summary Judgment (Document No. 23, filed January 12, 2001) is **DENIED**;

4) Defendant's Motion to Attach Plaintiff's Back Pay Funds (Document No. 22, filed December 29, 2000) is **DENIED AS MOOT**. Plaintiff shall **MAINTAIN** the funds in the escrow account opened by his attorney until further order of the Court; and

5) Plaintiff's discovery request is **GRANTED**. Further discovery by both parties is permitted provided, however, that all such discovery is completed by November 27, 2001.

**IT IS FURTHER ORDERED** that a scheduling conference will be conducted in due course.